Sherri PHILLIPS, d/b/a Concrete Technicians, Inc., Plaintiff–Respondent,

v.

HOKE CONSTRUCTION, INC., Defendant–Appellant.

No. 17773.

Missouri Court of Appeals, Southern District, Division Two.

June 24, 1992.

Motion for Rehearing or Transfer to Supreme Court Denied July 16, 1992.

Thomas Y. Auner, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for defendant-appellant.

James L. Bowles, Ozark, for plaintiff-respondent.

MONTGOMERY, Judge.

Plaintiff, Sherri Phillips, d/b/a Concrete Technicians, Inc., brought suit against Defendant, Hoke Construction, Inc., for the unpaid balance due under a "subcontract agreement." By her amended petition, Plaintiff alleged that she "is an individual residing in Christian County, Missouri d/b/a Concrete Technicians, Inc. a forfeited Missouri Corporation whose charter was forfeited on August 25, 1989, and subsequent to said date this Plaintiff has done business as Concrete Technicians, Inc., and that Ralph Gugliotta is an agent of this Plaintiff who at all times had the authority to enter into the subcontract agreement...." The alleged date of the subcontract agreement was February 16, 1990.

Defendant filed a motion to dismiss the amended petition which alleged, among other grounds, that "[p]laintiff does not have legal capacity to sue Defendant." This motion was overruled, and Defendant filed its answer setting forth the same allegation among its various defenses.

After a bench trial, the court entered the following judgment:

That Plaintiff Sherry [sic] Phillips as the statutory trustee for Concrete Technicians, Inc., a forfeited Missouri corporation, have and recover from Defendant Hoke Construction, Inc. the sum of $8,857.06.

From this judgment Defendant appeals, presenting us with two points relied on. Because our determination on Point I is dispositive of the case, the last point is not discussed. The first point recites:

The trial court erred in overruling defendant's motion to dismiss plaintiff-respondent's amended petition and in holding that plaintiff-respondent, Sherri Phillips, properly brought suit in her name in her capacity as statutory trustee of Concrete Technicians, Inc. because there is no evidence that plaintiff brought suit in her capacity as statutory trustee pursuant to *Mo.Rev.Stat.* § 351.525 (Cum. Supp.1990), repealed May 29, 1991, *Mo. Rev.Stat.* § 351.525 (Cum.Supp.1991) wherein it provides that a forfeited corporation may only bring a lawsuit through its statutory trustees.

The standard for appellate review in a court-tried case requires this Court to affirm the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Further, the appellate court must accept as true the evidence and permissible inferences therefrom favorable to the prevailing party and disregard the contradictory evidence." *Ware v. Ware*, 647 S.W.2d 582, 584 (Mo.App.1983).

Plaintiff's evidence revealed that the corporate rights and privileges of Concrete Technicians, Inc., were forfeited on August 25, 1989, and the certificate of incorporation was canceled by the secretary of state. Plaintiff and Ralph Gugliotta comprised the last board of directors and were the only officers on August 25, 1989. Plaintiff was aware of the forfeiture.

The subcontract agreement was marked as Plaintiff's Exhibit 1. The agreement required certain work to be done for Defendant in Tennessee. The contracting parties shown at the top of Plaintiff's Exhibit 1 were Concrete Technicians, Inc., and Defendant. The signatures shown at the bottom of the agreement were Defendant's as contractor and Ralph Gugliotta's as subcontractor. His signature was not made in any representative capacity.

Plaintiff testified Gugliotta was employed by her as an estimator and a foreman, and at the time of the subcontract agreement, she was doing business in the name of Concrete Technicians. She emphasized Gugliotta had the authority to sign estimates and agreements on her behalf.

The testimony of Ralph Gugliotta, in general, confirmed that of Plaintiff. Additionally, he testified that Defendant prepared Plaintiff's Exhibit 1, and it was his oversight for the contracting party to be called Concrete Technicians, Inc. He stated that was not correct because, "we were working under Concrete Technicians."

During cross-examination, Plaintiff testified she sent all the papers in to the secretary of state's office to register as a sole proprietorship doing business as Concrete Technicians.[1] She stated she was attempting to do business as Concrete Technicians, not incorporated.

After execution of the subcontract agreement, Plaintiff dispatched Gugliotta and one workman to complete the job near Gatlinburg, Tennessee. While the workmen were on the job, David Hoke, President of the Defendant, inspected the work. He talked to Gugliotta concerning how some of the work should be done. At that time he had made no decision not to pay for the work.

At trial, Defendant did not seriously dispute the contemplated work was properly done. Defendant's evidence mainly showed that the contract was with Concrete Technicians, Inc., not Plaintiff individually, and no consent to assignment was

1. This testimony infers that Plaintiff attempted to register Concrete Technicians as a fictitious name pursuant to § 417.200, RSMo 1986. However, the record does not reveal compliance was ever accomplished.

ever given concerning the subcontract agreement.

The trial court filed its Memorandum containing certain findings of fact and conclusions of law. The trial court noted that Concrete Technicians, Inc., forfeited its charter August 25, 1989, before the subcontract agreement was made February 25, 1990. The trial court then made the following determination:

> Certain propositions follow. Concrete Technicians, Inc., could not enter into new contracts after forfeiture. The statutory trustees could only wind up the corporate affairs. The contract itself purports to be with the corporation, but legally, the corporation could not contract. Plaintiff testified she knew of the forfeiture and was doing business as an individual. Perhaps, this would be possible and [Gugliotta] who signed the contract would be acting for an undisclosed principal.

The trial court noted Defendant's position that Plaintiff could not do business as an individual under the name of a forfeited corporation and determined if that was so, "then Defendant could accept the benefits of the bargain and would not be responsible to anyone." The court then held:

> [T]hat Plaintiff properly brought the suit in her name but that it was brought in her capacity as statutory trustee and that the fact that the contract was made after forfeiture does not prevent enforcement of the contract against Defendant but merely removes the shield of the corporation and Plaintiff has personal liability to Defendant. This result avoids another suit if the corporation is reinstated and is consistent with the written agreement. It also avoids the unjust result of Defendant having received performance but incurring no liability.

■ We agree with Defendant that no evidence supports the holding of the trial court that Plaintiff brought suit in her capacity as a statutory trustee of Concrete Technicians, Inc. Both her pleadings and evidence clearly show suit was brought by Plaintiff, individually, doing business as Concrete Technicians, Inc. For that reason, it is unnecessary in our opinion to delve into any legal ramifications of a corporation attempting to conduct business after forfeiture of its charter nor into the powers and duties of its statutory trustees.

As the trial court stated, and Defendant agrees, Concrete Technicians, Inc., ceased to exist on August 25, 1989.[2] Defendant cites *Moore v. Matthew's Book Co., Inc.*, 597 F.2d 645 (8th Cir.1979), which relied on *Clark Estate Co. v. Gentry*, 362 Mo. 80, 240 S.W.2d 124 (1951), *cert. denied*, 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653 (1951), where our Supreme Court stated:

> On the day of the forfeiture, the company's very being as a legal entity was destroyed and from that date the then officers and directors of the dissolved corporation became statutory trustees of its affairs for the purposes stated in the statute.

*Id.* 240 S.W.2d at 127.

On February 25, 1990, the subcontract agreement was made when the legal entity of Concrete Technicians, Inc., no longer existed. As the trial court indicated, Plaintiff knew of the forfeiture and afterwards was doing business as an individual. We believe our decision turns on (1) whether an individual doing business under an unregistered fictitious name can enforce a contract made only in such fictitious name and (2) whether Gugliotta, as agent for his undisclosed principal, can create a binding contract with Defendant on behalf of Plaintiff.

■ As to (1), the criminal case of *State v. Euge*, 400 S.W.2d 119 (Mo.1966), pro-

---

**2.** § 351.525, RSMo Supp.1990, provides if any corporation fails to comply with any of six requirements, "the corporate rights and privileges of the corporation shall be forfeited, and the secretary of state shall thereupon cancel the certificate, or license, of the corporation ..., whereupon all the powers, privileges and franchises conferred upon the corporation by the certificate, or license, shall, subject to rescission as provided in this chapter, cease and determine...." This statute was repealed effective May 29, 1991 (L.1991 H.B. 219) and apparently replaced by § 351.476, § 351.484, and § 351.-486, RSMo Supp.1991, which are not relevant here.

vides substantial guidance. There, defendant was convicted of obtaining money with intent to cheat and defraud by means of a bogus check. Defendant opened a bank account with a $40 deposit under the fictitious name of Dayton Mitchell Horn. Defendant subsequently drew a $45 check on that account signed with his fictitious name. The check was returned marked " 'insufficient funds.' " The Supreme Court reversed the conviction noting that defendant's deposit contract with the bank was not void because "a person may assume a different name from his true one and may make contracts under his fictitious name." *Id.* at 122. The court observed that "Section 417.200 RSMo 1959 V.A.M.S. (now § 417.200, RSMo 1986) provides that it shall be unlawful to transact business under a fictitious name without first registering said name with the Secretary of State, and § 417.230, RSMo 1959, V.A.M.S. (now § 417.230, RSMo 1986) makes failure to register a misdemeanor." *Id.* The court concluded defendant may have violated the latter section, but such conduct did not make his contract with the bank void. Cited in the opinion is *Bassen v. Monckton,* 308 Mo. 641, 274 S.W. 404 (1925). Plaintiffs in that case were co-partners doing business as Hannibal Wood Working Company who brought suit for materials furnished to defendant in construction of a building. The name, Hannibal Wood Working Company,[3] was not registered with the secretary of state as required by the fictitious name statutes then in existence.[4] The supreme court upheld plaintiffs' judgment and in regard to violation of the fictitious name statute said:

> The principle announced by Judge Rombauer in the Smythe Case, 61 Mo.App. loc. cit. 287, 288, we think is correct:

> "Whatever may be the rule in some states, we must consider it as settled in this state for the present that, where a contract is not prohibited by law, and has been fully executed by the person rendering the services, he may recover their value from the person who received their benefit, though in rendering the services the person was guilty of a misdemeanor, because he rendered them without a proper certificate or license for doing so."

> From the wording and apparent purpose of the statute we hold that it is a penal statute, and that it does not restrict the rights of the plaintiffs to contract and to recover for value rendered.

*Id.* 274 S.W. at 407.

*Bassen* is factually similar to the present case. In both cases, labor and material or materials were furnished by a plaintiff doing business under an unregistered fictitious name. Both defendants received the same value in benefits regardless of whether plaintiff's fictitious name was registered or not.

In this case, the trial court searched for a method to uphold the contract after recognizing it would be unjust for Defendant to receive performance under the contract without liability. We agree with the trial court that the contract is enforceable. However, such determination has no meaning unless the contract, signed by Gugliotta on behalf of Plaintiff, can be enforced by Plaintiff.

■ Concerning issue (2), Plaintiff's evidence was undisputed that Gugliotta was her foreman, estimator, and authorized agent to contract on her behalf. Gugliotta signed the agreement as subcontractor and testified he knew, "we were working under

---

**3.** The fictitious name, Concrete Technicians, Inc., gives us concern because of the word "Inc." § 351.110, RSMo 1986, requires a corporate name to contain the word "corporation," "company," "incorporated," or "limited," or an abbreviation of any such word. Yet, § 417.200 RSMo 1986, does not exclude use of any of the foregoing words in a fictitious name registered with the secretary of state. Our research reveals no prohibition against use of the word "Inc." in a fictitious name. In *Bassen,* the Supreme Court registered no objection to use of "company" in plaintiff's fictitious name. Therefore, we assume, without deciding, Plaintiff here could use a fictitious name containing "Inc." under the particular facts of this case.

**4.** §§ 417.200 and 417.230, RSMo 1986, are almost identical to Mo.Rev.Stat. § 13276 and § 13279 (1919) discussed in *Bassen.*

Concrete Technicians," as opposed to "Concrete, Inc."

It is a well-established general rule of law that where an agent on behalf of his principal enters into a contract as though for himself, and the existence of the principal is not disclosed, the contract inures to the benefit of the principal who may appear and hold the other party to the contract made by the agent. By appearing and claiming the benefit of the contract, it thereby becomes his own to the same extent as if his name had originally appeared as a contracting party, and the fact that the agent has made the contract in his own name does not preclude the principal from suing thereon as the real party in interest.

*Sonnenfeld Millinery Co. v. Uhri,* 83 S.W.2d 168, 169 (Mo.App.1935).

Stated another way, "When an agent makes a simple contract for his principal, but, contracting as if he were principal, conceals the fact that he is an agent, the principal may at any time appear in his true character and claim all the benefits of the contract from the other contracting party, so far as he can do so without injury to that other by the substitution of himself for his agent." 3 Am.Jur.2D *Agency* § 329 (1986). The evidence in the present case is undisputed that Defendant suffered no injury from the performance of the work under the contract, and nothing should prohibit Plaintiff from appearing in her true character to claim the benefits of her performance. Therefore, we believe the contract signed by Gugliotta can be enforced by Plaintiff.

In our review of a court-tried case, our concern is whether the trial court reached the proper result, not the route taken to reach that result. A correct decision by a trial court will not be disturbed on appeal merely because the trial court gave a wrong or insufficient reason. *Fesperman v. Silver Dollar City, Inc.,* 796 S.W.2d 384, 387–88 (Mo.App.1990); *Edgar v. Fitzpatrick,* 377 S.W.2d 314, 318 (Mo. banc 1964); *Board of Regents v. Harriman,* 792 S.W.2d 388, 393 (Mo.App.1990). In our view, the trial court made the correct decision by entering judgment for Plaintiff. Generally, the lower court's judgment is to be upheld if it is correct under any reasonable theory supported by the evidence. *P.A.W. v. A.M.W.,* 716 S.W.2d 284, 287 (Mo.App.1986). Here, the evidence fully supports the trial court's judgment on the theory we have explained, except for Plaintiff's designation as statutory trustee. The trial court incorrectly determined that Plaintiff brought suit in her capacity as statutory trustee because that determination is unsupported by the evidence and must be reversed under *Murphy v. Carron, supra.*

To summarize our conclusions, we hold: (1) That the judgment in favor of Plaintiff, individually, should be affirmed, and (2) that portion of the judgment describing Plaintiff "as the statutory trustee for Concrete Technicians, Inc., a forfeited Missouri corporation," should be reversed.

The cause is remanded for entry of judgment in accordance with this opinion.

FLANIGAN, C.J., and SHRUM, P.J., concur.